**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GLENN WILLIAMS and KATHY FREEMAN, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.1:18-cv-06015 |
| SELECT PORTFOLIO SERVICING, INC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs, GLENN WILLIAMS and KATHY FREEMAN, individually, and on behalf of all others similarly situated, by and through their attorneys, Joseph S. Davidson and Mohammed O. Badwan of SULAIMAN LAW GROUP, LTD., pursuant to Fed. R. Civ. P. 23, complaining of Defendants, SELECT PORTFOLIO SERVICING, INC., EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC, as follows:

## NATURE OF THE ACTION

1.      This action seeks damages for Defendants' willful and/or negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a) under 15 U.S.C. § 1681p with respect to Plaintiffs' FCRA claims.

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) with respect to Plaintiffs' FDCPA claims.

4.      Venue is proper as a substantial part of the events or omissions giving rise to the claim(s) occurred in this judicial district.  28 U.S.C. § 1391(b)(2).

## PARTIES

5.      GLENN WILLIAMS and KATHY FREEMAN ("Glenn" individually, "Kathy" individually, "Plaintiffs" collectively) are natural persons, who at all times relevant resided in this judicial district.

6.      Plaintiffs are "consumers" as defined by 15 U.S.C. §§ 1681a(b) and (c).

7.      Plaintiffs are "persons" as defined by 15 U.S.C. § 1681a(b).

8.      Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3) as they are natural persons obligated or allegedly obligated to pay a debt.

9.      SELECT PORTFOLIO SERVICING, INC. ("SPS") is a foreign corporation with a principal place of business in Salt Lake City, Utah.

10.     SPS is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

11.     SPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as it uses instrumentalities of interstate commerce and the mail in its business.

12.     The principal purpose of SPS's business is the collection of debt owed or due or asserted to be owed or due another.

13. On information and belief, SPS transmits hundreds of debt collection letters from its principal place of business.

14. Alternatively, SPS transmits hundreds of debt collection letters to residents of this judicial district.

15. EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a foreign limited liability company with its principal place of business in Atlanta, Georgia.

16. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

18. EXPERIAN INFORMATION SOLUTIONS, INC. ('Experian") is a foreign corporation with its principal place of business in Costa Mesa, California.

19. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

20. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

21. TRANSUNION LLC ("TransUnion") is a limited liability company with its principal place of business in Chicago, Illinois.

22. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

23. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

## FACTUAL ALLEGATIONS

24. On November 29, 2005, Plaintiffs executed a mortgage (the "Mortgage") in favor of Universal American Mortgage Company, LLC.

25.     The Mortgage secured the purchase of Plaintiff's personal residence located at 10512 Hunter Trail, Huntley, Illinois 60142 (the "Property").

26.     The Mortgage secured the repayment of the indebtedness evidenced by a promissory note in the amount of $84,550.00 (the "Loan").

27.     Subsequently, HSBC Mortgage Services, Inc. ("HSBC") acquired mortgage servicing rights to the Loan.

28.     On December 17, 2015, Plaintiffs filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

29.     Simultaneously with the voluntary petition, Plaintiffs filed their Chapter 13 plan. Plaintiffs' plan provided for the Property to be surrendered to HSBC.

30.     Plaintiffs' Chapter 13 Plan was confirmed on February 5, 2016 (the "Confirmed Plan").

31.     On September 28, 2016, the Bankruptcy Court entered an Order of Discharge for the benefit of Plaintiffs under 11 U.S.C. § 1328(a).

32.     Plaintiffs' discharge extinguished Plaintiffs' personal liability on the Loan.

33.     Subsequent to Plaintiffs' discharge, SPS acquired mortgage servicing rights from HSBC.

### SPS's furnishing of information to the credit reporting agencies

34.     On April 13, 2018, Plaintiffs each obtained credit reports from Equifax, Experian, and TransUnion.

35.     Plaintiffs discovered that SPS inaccurately reported Plaintiffs' "[b]alance amount" as "$98,461.00"; "[a]mount past due" as "$22,796.00"; "[s]tatus as "[o]ver 120 days past due

mortgage"; and "[s]cheduled payment amount" as $786.00 to Equifax. Notably, Plaintiffs also discovered that SPS made no mention of Plaintiffs' bankruptcy discharge.

36.     Plaintiffs discovered that SPS inaccurately reported Plaintiffs' "[b]alance" as "$98,461.00;" "[s]tatus" as "$22,796.00 past due;" "[p]ayment history" as "[a]ccount 180 days past due;" and "[m]onthly payment" as "$786.00" to Experian. Plaintiffs also discovered that SPS made no mention of Plaintiffs' bankruptcy discharge.

37.     Plaintiffs discovered that SPS inaccurately reported Plaintiffs' "[b]alance" as "$98,461.00;" "[p]ast due" as "$22,796;" "[p]ay status" as "[a]ccount 120 days past due date;" and "[t]erms" as "$786.00" to TransUnion. Plaintiffs also discovered that SPS made no mention of Plaintiffs' bankruptcy discharge.

38.     On May 22, 2018, Plaintiffs sent dispute letters to Equifax, Experian, and TransUnion by First-Class Mail®.

39.     Plaintiffs' dispute letters to Equifax, Experian, and TransUnion articulated why the Loan is reporting inaccurately and contained copies of Plaintiffs' Discharge Orders.

40.     Plaintiffs requested that Equifax, Experian, and TransUnion investigate and correct SPS's inaccurate reporting.

41.     On information and belief, Equifax, Experian, and TransUnion received Plaintiffs' dispute letters.

42.     On information and belief, Equifax, Experian, and TransUnion notified  SPS of Plaintiffs' disputes within 5 days of receiving the same. *See* 15 U.S.C. §1681i(a)(2).

43.     On June 12, 2018, Equifax mailed Glenn its investigation results.

44.     Equifax's investigation results revealed that SPS continued to report the Loan with a "[b]alance amount" of "$98,461.00"; an "[a]mount past due" of "$22,796.00"; a "[s]tatus "of

5

"[o]ver 120 days past due mortgage"; and a "[s]cheduled payment amount" of $786.00. Additionally, SPS continued to fail to report the Loan as discharged.



45.     On June 20, 2018, Equifax mailed Kathy its investigation results.

46.     Equifax's investigation results revealed that SPS continued to report the Loan with a "[b]alance amount" of "$98,461.00"; an "[a]mount past due" of "$22,796.00"; a "[s]tatus "of "[o]ver 120 days past due mortgage"; and a "[s]cheduled payment amount" of $786.00. Additionally, SPS reported a "Balloon Pay Amount of $70,476" and continued to fail to report the Loan as discharged.

47.     On June 21, 2018, Experian mailed Glenn its investigation results.

48.     Experian's investigation results revealed that SPS continued to report the Loan with a "[r]ecent balance" of "$99,127.00"; an "[a]mount past due" of "$23,582.00"; as "180 days past due;" "and a "[m]onthly payment" of $786.00. Additionally, SPS continued to fail to report the Loan as discharged.



49.  On June 21, 2018, Experian mailed Kathy its investigation results.

50.  Experian's investigation results revealed that SPS continued to report the Loan with a "[r]ecent balance" of "$99,127.00"; an "[a]mount past due" of "$23,582.00"; as "180 days past due;" "and a "[m]onthly payment" of $786.00. Additionally, SPS continued to fail to report the Loan as discharged.



51.  On June 21, 2018, TransUnion mailed Glenn its investigation results.

52.  TransUnion's investigation results revealed that SPS continued to report the Loan with a balance of "98,461"; as "Past due" in the amount of "$22,796"; and as "120 days past due." Additionally, SPS continued to fail to report the Loan as discharged.

SELECT PORTFOLIO SVCG #277002004**** ( 10401 DEERWOOD PARK BV, JACKSONVILLE, FL 32256, (800) 258-8602 )
We investigated the information you disputed and updated: **Remarks; Rating; Special Payment.** Here is how this item appears on your credit report following our investigation.

| | | | | | |
|---|---|---|---|---|---|
| Date Opened: | 11/29/2005 | Balance: | $98,461 | Pay Status: | >Account 120 Days Past Due Date< |
| Responsibility: | Joint Account | Date Updated: | 05/10/2018 | | |
| Account Type: | Mortgage Account | High Balance: | $84,550 | Terms: | $786 per month, paid Monthly for 180 months |
| Loan Type: | SECOND MORTGAGE | Past Due: | >$22,796< | | |
| | | | | Maximum Delinquency of 120 days in 06/2017 and in 05/2018 for $22,796< | |

7

53.     On June 21, 2018, TransUnion mailed Kathy its investigation results.

54.     TransUnion's investigation results revealed that SPS continued to report the Loan with a balance of "98,461"; as "Past due" in the amount of "$22,796"; and as "120 days past due." Additionally, SPS continued to fail to report the Loan as discharged.

**SELECT PORTFOLIO SVCG #277002004****** ( 10401 DEERWOOD PARK BV, JACKSONVILLE, FL 32256, (800) 258-8602 )

We investigated the information you disputed and updated: **Remarks; Rating; Special Payment.** Here is how this item appears on your credit report following our investigation.

| | | | | | |
|---|---|---|---|---|---|
| Date Opened: | 11/29/2005 | Balance: | $98,461 | Pay Status: | >Account 120 Days Past Due Date< |
| Responsibility: | Joint Account | Date Updated: | 05/10/2018 | | |
| Account Type: | Mortgage Account | High Balance: | $84,550 | Terms: | $786 per month, paid Monthly for 180 months |
| Loan Type: | SECOND MORTGAGE | Past Due: | >$22,796< | | >Maximum Delinquency of 120 days in 08/2017 and in 05/2018 for $22,796< |

55.     To date, SPS continues to transmit inaccurate information regarding the Loan to Equifax, Experian, and TransUnion.

56.     This entire experience has imposed distrust, distress, embarrassment and frustration on Plaintiffs.

57.     Indeed, Plaintiffs feel helpless to regain control of their credit standing and creditworthiness.

58.     This entire experience has resulted in expenditure of considerable time and Plaintiffs continue to suffer from anxiety and mental anguish as a result of the inaccurate reporting of the Loan.

59.     The inaccurate reporting of the Loan has substantially frustrated Plaintiffs' bankruptcy discharge.

60.     Plaintiffs have incurred costs associated with the mailing of the dispute letters.

61.     Plaintiffs continue to be harmed by the inaccurate reporting of the Loan.

**SPS's unlawful collection activities**

62.    On June 14, 2018, SPS sent Plaintiffs a Mortgage Statement seeking payment on the Loan.

63.    A true and correct copy of this Mortgage Statement is attached as Exhibit A.

64.    The Mortgage Statement states, in pertinent part:

Loan Due Date        12/01/2015

Payment Due Date    07/01/2018

**Amount Due          $25,422.88**

65.    The Mortgage Statement further stated:

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home.
**As of June 14, 2018, you are 926 days delinquent on your mortgage loan.**
- Payment due 06/2018: Unpaid payment of $786.09
- Payment due 05/2018: Unpaid payment of $786.09
- Payment due 04/2018: Unpaid payment of $786.09
- Payment due 03/2018: Unpaid payment of $786.09
- Payment due 02/2018: Unpaid payment of $786.09
- Payment due 01/2018: Unpaid payment of $786.09

**Total: $25,422.88 due. You must pay this amount to bring your loan current.**

66.    Moreover, the Mortgage Statement stated:

**This is an attempt to collect a debt**. (emphasis added).

67.    Lastly, the Mortgage Statement provided:

**CREDIT REPORTING** SPS furnishes information to consumer reporting agencies. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage.

68.     Notably, the Mortgage Statement failed to acknowledge that the Loan is discharged and that Plaintiffs have no obligation to make payment on the Loan.

69.     The Mortgage Statement included a payment coupon with payment instructions.

70.     The Mortgage Statement is a "communication" as defined by 15 U.S.C. § 1692(a)(2) as it conveys information regarding the Loan directly to Plaintiffs.

71.     The Mortgage Statement attempted to collect monies allegedly owed by Plaintiffs on the Loan.

72.     By transmitting the Mortgage Statement to Plaintiffs, SPS attempted to collect debt incurred for "personal, family, or household purpose" as defined by 15 U.S.C. § 1692a(5).

## INDIVIDUAL CLAIMS FOR RELIEF

### Count I:
### SPS's violation(s) of 15 U.S.C. § 1681 *et seq.*

73.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

74.     The aforementioned credit reports are "consumer reports" as defined by 15 U.S.C. § 1681a(d)(1).

**A.     SPS's failure to conduct an investigation**

75.     15 U.S.C. § 1681s-2(b)(1) provides

> "[a]fter receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

> (A)     Conduct an investigation with respect to the disputed information;

> (B)     Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2);

10

(C)    Report the results of the investigation to the consumer reporting agency;

(D)    If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)    If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

    (i)    Modify that item of information;

    (ii)    Delete that item of information; or

    (iii)    Permanently block the reporting of that item of information.

76.    Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), SPS received Plaintiffs' dispute letters from Equifax, Experian, and TransUnion.

77.    SPS violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information.

78.    SPS violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, Experian, and TransUnion.

79.    Had SPS conducted a reasonable investigation, it would have discovered that Plaintiffs' discharge extinguished Plaintiffs' personal liability on the debt owed to SPS.

80.    SPS violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report the results of the investigation to Equifax, Experian, and TransUnion.

81.     SPS violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information.

82.     15 U.S.C. § 1681n provides "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)

      (A)     any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

  (2)     such amount of punitive damages as the court may allow; and

  (3)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

83.     15 U.S.C. § 1681o provides "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)     any actual damages sustained by the consumer as a result of the failure; and

(2)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

84.     SPS's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

A.     find SPS in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A), 1681s-2(b)(1)(B), 1681s-2(b)(1)(C), and 1681s-2(b)(1)(E).

B.     award any actual damages to Plaintiffs as a result of SPS's violation;

C.     award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

D.     award any punitive damages, as the Court may allow;

E.     award the costs of the action, together with any attorneys' fees incurred in connection with such action as the Court may determine to be reasonable under the circumstances; and

F.     award such other relief as this Court deems just and proper.

**Count II**
**Equifax's violation(s) of 15 U.S.C. § 1681 *et seq.***

85.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**A.     Equifax's failure to follow reasonable procedures**

86.     The FCRA mandates "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

87.     On multiple and numerous occasions, Equifax prepared patently inaccurate consumer reports concerning Plaintiffs.

88.     Upon information and belief, Equifax furnished such patently inaccurate consumer reports to one or more third parties, thereby misrepresenting Plaintiffs' creditworthiness.

13

89.     Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs.

**B.      Equifax's failure to conduct a reasonable investigation**

90.     The FCRA mandates "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly *** the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer. 15 U.S.C. § 1681i(1)(A).

91.     The FCRA further mandates "[i]f, after any reinvestigation of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall – (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.  15 U.S.C. §§ 1681i(5)(A)(i) and (ii).

92.     Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which Equifax received Plaintiffs' dispute letter(s).

93. Equifax violated 15 U.S.C. § 1681i(a)(2) by failing to provide adequate notification of the dispute to SPS before the expiration of the 5-business-day period beginning on the date on which Equifax received Plaintiffs' dispute letter(s).

94. Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs before the end of the 30-day period beginning on the date on which Equifax received Plaintiffs' dispute letter(s).

95. Equifax violated 15 U.S.C. § 1681i(a)(5)(A)(i) by failing to promptly delete that item of information from the file of Plaintiffs, or modify that item of information, as appropriate, based on the results of the reinvestigation.

96. Equifax violated 15 U.S.C. § 1681c(f) by failing to indicate Plaintiffs' dispute(s) in each consumer report that includes the disputed information.

97. 15 U.S.C. § 1681n provides "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)

    (A)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

(2)    such amount of punitive damages as the court may allow; and

(3)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

98. 15 U.S.C. § 1681o provides "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)    any actual damages sustained by the consumer as a result of the failure; and

(2)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

99.    Equifax's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

A.    find Equifax in violation of 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), 1681i(a)(2), 1681i(a)(4), 1681i(a)(5)(A)(i), and 1681c(f).

B.    award any actual damages to Plaintiff as a result of Equifax's violation;

C.    award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

D.    award any punitive damages, as the Court may allow;

E.    award the costs of the action, together with any attorneys' fees incurred in connection with such action as the Court may determine to be reasonable under the circumstances; and

F.    award such other relief as this Court deems just and proper.

### Count III
### Experian's violation(s) of 15 U.S.C. § 1681 *et seq.*

100.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**A.    Experian's failure to follow reasonable procedures**

16

101.    The FCRA mandates "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

102.    On multiple and numerous occasions, Experian prepared patently inaccurate consumer reports concerning Plaintiffs.

103.    Upon information and belief, Experian furnished such patently inaccurate consumer reports to one or more third parties, thereby misrepresenting Plaintiffs' creditworthiness.

104.    Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs.

**B.    Experian's failure to conduct a reasonable investigation**

105.    The FCRA mandates "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly *** the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.  15 U.S.C. § 1681i(1)(A).

106.    The FCRA further mandates "[i]f, after any reinvestigation of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall – (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that

the information has been modified or deleted from the file of the consumer. 15 U.S.C. §§ 1681i(5)(A)(i) and (ii).

107. Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which Experian received Plaintiffs' dispute letter(s).

108. Experian violated 15 U.S.C. § 1681i(a)(2) by failing to provide adequate notification of the dispute to SPS before the expiration of the 5-business-day period beginning on the date on which Experian received Plaintiffs' dispute letter(s).

109. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs before the end of the 30-day period beginning on the date on which Experian received Plaintiffs' dispute letter(s).

110. Experian violated 15 U.S.C. § 1681i(a)(5)(A)(i) by failing to promptly delete that item of information from the file of Plaintiffs, or modify that item of information, as appropriate, based on the results of the reinvestigation.

111. Experian violated 15 U.S.C. § 1681c(f) by failing to indicate Plaintiffs' dispute(s) in each consumer report that includes the disputed information.

112. 15 U.S.C. § 1681n provides "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)

      (B)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

(2)     such amount of punitive damages as the court may allow; and

(4)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

113.    15 U.S.C. § 1681o provides "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(3)     any actual damages sustained by the consumer as a result of the failure; and

(4)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

114.    Experian's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

A.      find Experian in violation of 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), 1681i(a)(2), 1681i(a)(4), 1681i(a)(5)(A)(i), and 1681c(f).

B.      award any actual damages to Plaintiff as a result of Experian's violation;

C.      award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

D.      award any punitive damages, as the Court may allow;

E.      award the costs of the action, together with any attorneys' fees incurred in connection with such action as the Court may determine to be reasonable under the circumstances; and

F.     award such other relief as this Court deems just and proper.

**Count IV**
**TransUnion's violation(s) of 15 U.S.C. § 1681 *et seq.***

115.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**A.    TransUnion's failure to follow reasonable procedures**

116.    The FCRA mandates "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

117.    On multiple and numerous occasions, TransUnion prepared patently inaccurate consumer reports concerning Plaintiffs.

118.    Upon information and belief, TransUnion furnished such patently inaccurate consumer reports to one or more third parties, thereby misrepresenting Plaintiffs' creditworthiness.

119.    TransUnion violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs.

**B.    TransUnion's failure to conduct a reasonable investigation**

120.    The FCRA mandates "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly *** the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer. 15 U.S.C. § 1681i(1)(A).

121.    The FCRA further mandates "[i]f, after any reinvestigation of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall – (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.  15 U.S.C. §§ 1681i(5)(A)(i) and (ii).

122.    TransUnion violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date on which TransUnion received Plaintiffs' dispute letter(s).

123.    TransUnion violated 15 U.S.C. § 1681i(a)(2) by failing to provide adequate notification of the dispute to SPS before the expiration of the 5-business-day period beginning on the date on which TransUnion received Plaintiffs' dispute letter(s).

124.    TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs before the end of the 30-day period beginning on the date on which TransUnion received Plaintiffs' dispute letter(s).

125.    TransUnion violated 15 U.S.C. § 1681i(a)(5)(A)(i) by failing to promptly delete that item of information from the file of Plaintiffs, or modify that item of information, as appropriate, based on the results of the reinvestigation.

126.    TransUnion violated 15 U.S.C. § 1681c(f) by failing to indicate Plaintiffs' dispute(s) in each consumer report that includes the disputed information.

127.    15 U.S.C. § 1681n provides "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)

(C)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

(2)    such amount of punitive damages as the court may allow; and

(5)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

128.    15 U.S.C. § 1681o provides "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(5)    any actual damages sustained by the consumer as a result of the failure; and

(6)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

129.    TransUnion's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

A.    find TransUnion in violation of 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), 1681i(a)(2), 1681i(a)(4), 1681i(a)(5)(A)(i), and 1681c(f).

B.    award any actual damages to Plaintiff as a result of TransUnion's violation;

22

C.     award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

D.     award any punitive damages, as the Court may allow;

E.     award the costs of the action, together with any attorneys' fees incurred in connection with such action as the Court may determine to be reasonable under the circumstances; and

F.     award such other relief as this Court deems just and proper.

**Count V:**
**SPS's violation(s) of 15 U.S.C. § 1692 *et seq.***

130.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**Violation of 15 U.S.C. §§ 1692e, e(2), and e(10)**

131.    Section 1692e generally prohibits the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt."

132.    Section 1692e(2) prohibits "the false representation of the character, amount, or legal status of any debt."

133.    Section 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

134.    "A demand for immediate payment while a debtor is in bankruptcy is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc*., 368 F.3d 726, 728 (7th Cir. 2004).

23

135.     By sending Exhibit A, SPS violated 15 U.S.C. §§ 1692e, e(2), and e(10) by falsely representing that Plaintiffs owe $25,422.88 despite the fact that Plaintiffs have no obligation to make payment on the Loan.

### Violation(s) of 15 U.S.C. §§ 1692e(5) and e(8)

136.     Section 1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

137.     Section 1692e(8) prohibits "communicating or threatening to communicate to any person credit information which is known or should be known to be false."

138.     SPS violated 15 U.S.C. §§ 1692e(5) and e(8) by "notifying [Plaintiffs] that a negative credit report reflecting on [their] credit record may be submitted to a credit reporting agency if [they] fail to fulfill the terms of [their] Note and Mortgage."

139.     SPS violated 15 U.S.C. § 1692e(8) by falsely reporting the Loan as due and owing and in default.

140.     SPS knew or should have knew that Plaintiffs were granted a discharge under section 1328(a) of the Bankruptcy Code; and therefore, were no longer liable for the discharged Loan..

141.     Plaintiffs may enforce the provisions of 15 U.S.C. §§ 1692e, e(2), e(5), e(8), and e(10) pursuant to section k of the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the Fair Debt Collection Practices Act] with respect to any person is liable to such person in an amount equal to the sum of -

(1)     any actual damage sustained by such person as a result of such failure;

(2)

(A)     in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

(7)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiffs request the following relief:

A.     find that SPS violated 15 U.S.C. §§ 1692e, e(2), e(5), e(8), and e(10);

B.     enjoin SPS from further violations of 15 U.S.C. §§ 1692e, e(2), e(5), e(8), and e(10);

C.     award any actual damage sustained by Plaintiffs as a result of SPS's violation pursuant to 15 U.S.C. § 1692k(a)(1);

D.     award such additional damages, as the Court may allow, but not exceeding $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

E.     award costs of this action including expenses together with reasonable attorneys' fees as determined by this Court pursuant to 15 U.S.C. § 1692k(a)(3); and

F.     award such other relief as this Court deems just and proper.

## CLASS ALLEGATIONS

142.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

143.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class").

**A.     Numerosity.**

144.     On information and belief, SPS mailed mortgage statements with an identical format as the Mortgage Statement to Illinois consumers on no less than 40 occasions.

25

145.    The exact number of members of the Putative Class are unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.

**B.    Typicality.**

146.    Plaintiffs' claims are typical of the claims of other members of the Putative Class.

147.    On information and belief, SPS business records will show that they mailed mortgage statements with an identical format as the Mortgage Statement to borrowers on behalf of multiple lenders.

148.    Plaintiffs' claims are typical of members of the Putative Class because Plaintiffs and members of the Putative Class are entitled to statutory damages as result of SPS's conduct.

**C.    Commonality and Predominance.**

149.    There are common questions of fact and law with the claims of Plaintiffs and the Putative Class.

150.    These common questions of fact and law are whether SPS attempted to collect discharged mortgage debt.

151.    These common questions of fact and law are subject to common proof through review of SPS's business records.

152.    These common questions of fact and law are answerable for the entirety of the Putative Class.

153.    These common questions of fact and law predominate over any questions that may affect individual members of the Putative Class.

**D.    Superiority and Manageability.**

154.    This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

155.    Joinder of all parties is impracticable.

156.    The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution of SPS's unlawful collection activities.

157.    Even if individual members of the Putative Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties and courts.

158.    By contrast, a class action provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court.

159.    Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation.**

160.    Plaintiffs will adequately and fairly represent and protect the interests of the Putative Class.

161.    Plaintiffs have retained competent and experienced counsel in consumer class action litigation.

162.    Plaintiffs have no interests antagonistic to those of the Putative Class, and SPS has no defenses unique to Plaintiffs.

**CLASS CLAIMS FOR RELIEF**

**Count VI:**
**SPS's Violation(s) of 15 U.S.C. §§ 1692e, e(2), and e(10)**

163.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

164.    By sending mortgage statement with an identical format as Exhibit A, SPS violated 15 U.S.C. §§ 1692e, e(2), and e(10) by falsely representing that a discharged debt is owed when in fact it was not by virtue of the bankruptcy discharge injunction.

165.    By sending mortgage statement with an identical format as Exhibit A to members of the Putative Class, SPS violated 15 U.S.C. §§ 1692e, e(2), and e(10) by falsely representing that members of the Putative Class owe money on a discharge debt notwithstanding members of the Putative Class's bankruptcy discharge.

166.    As set forth above, Plaintiffs can satisfy the elements of Fed. R. Civ. P. 23, including numerosity.

167.    The Putative Class is defined as follows:

> All natural persons residing in the United States of America who (a) within the one (1) year prior to the filing of the original complaint and during its pendency (b) received the same or a substantially similar letter as the letter attached hereto as Exhibit A (c) for purposes of collection upon a consumer debt (d) that was discharged in Chapter 7 or Chapter 13 bankruptcy pursuant to 11 U.S.C. §§ 727 or 1328(a).

168.    Excluded from the Putative Class are: (1) SPS, its agents, parents, predecessors, subsidiaries, successors and any entity in which SPS, or its agents, parents, predecessors, subsidiaries, successors have a controlling interest, and those entities' current and former directors, employees and officers; (2) the Judge or Magistrate Judge to whom this case is assigned, as well as the Judge or Magistrate Judge's immediate family; (3) persons who execute and timely file a request for exclusion; (4) persons whose claim(s) in this matter have been finally adjudicated and/or otherwise released; (5) the assigns, legal representatives and/or successors of any such excluded person(s); and (6) Counsel for Plaintiffs and Counsel for SPS.

169.    Members of the Putative Class will be identified through discovery of SPS's business records.

170.    Section 1692k of the FDCPA provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of –

(1)     any actual damage sustained by such person as a result of such failure;

(2)

    (B)     in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiffs, on behalf of members of the Putative Class request the following relief:

A.      an order granting certification of the proposed class, including the designation of Plaintiffs as the named representatives, the appointment of the undersigned as Class Counsel, under the applicable provisions of Fed. R. Civ. P. 23;

B.      a finding that SPS violated 15 U.S.C. §§ 1692e(2) and e(10);

C.      an order enjoining SPS from further violation(s) of 15 U.S.C. §§ 1692e(2) and e(10);

D.      an award of such amount as the Court may allow for all other class members, not to exceed the lesser of $500,000 or 1 per centum of the net worth of SPS;

E.     an award of costs of this action, together with reasonable attorneys' fees as determined by this Court; and

F.     an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

August 31, 2018                                         Respectfully submitted,

                                                        */s/ Joseph Scott Davidson*

                                                        Joseph Scott Davidson
                                                        Mohammed Omar Badwan
                                                        **SULAIMAN LAW GROUP, LTD.**
                                                        2500 South Highland Avenue
                                                        Suite 200
                                                        Lombard, Illinois 60148
                                                        +1 630-575-8181
                                                        jdavidson@sulaimanlaw.com
                                                        mbadwan@sulaimanlaw.com

                                                        *Counsel for Glenn Williams and Kathy Freeman*

30